ELIPHALET S. PAIGE *v.* HOMER H. HAMMOND & OTHERS.

*Trover. Contract. Sale.*

It was agreed between the plaintiff and H., at a constable's sale, that plaintiff should bid off a quantity of hay and divide it, and that H. should not bid. If the plaintiff bid off the hay and H. did not bid, this would constitute a consideration for the contract; but *quaere,* whether such a consideration is allowable. But if the contract is valid, no property will pass while the contract is merely executory; and no property will vest in H., until he has paid or tendered the price.

And if there was evidence of a present executed contract of sale of a third of the hay, in common to H., still plaintiff had a right, by the general rules of law, to retain the thing until he was paid his money, for the price.

Where a contract requires concurrent acts of either party, the denial of the contract by one party, will not enable the other party to sue upon it, without showing a readiness, at least, to perform on his part.

A naked agreement merely, to purchase property for another, no funds being furnished and no general agency existing, vests no title in such other person, and if he takes the property forcibly, he is liable in trover.

TROVER for four tons of hay. Plea, *not guilty,* and trial by jury.

On the trial it was conceded, that the plaintiff bought at a constable's sale on execution, a mow of hay, in the barn of one Gilson, in Reading, and that afterwards the defendants took and carried away one third thereof; and testimony was introduced as to its value.

The testimony on the part of the defendants, was that of the defendant Hammond, who testified as follows:

"I knew of the constable's advertisement, for the sale of the hay at Gilson's barn, and before the sale day, he having some money collected for me, I spoke to him, and told him that I intended to bid on some of the hay, and wished if I bought any, that the money in his hands should apply on that, to which he assented.

On the sale day, the hay on a short scaffold and in a stable, was put up in one lot, and the plaintiff and myself both bid on it. I then told the plaintiff I would not bid against him, if he would go halves; to this he assented, and I bid no more, and it was struck off to him.

The hay, or mow of hay in the barn was then put up, for the

bidder to take half or the whole. The plaintiff asked me if I had hay enough, and I told him I wanted some more, as I thought the half which had been bought would not winter my cow. He said Alfred Watkins wanted to go shares with him and myself, and said if we bid it off, we could take the whole, and divide it between ourselves.

The plaintiff bought the hay, and I did not bid on it."

His testimony tended further to prove, that he called three times on the plaintiff, to go and divide the hay, who declined at first on account of other engagements, but finally getting into a controversy, as to the matter of the scaffold hay, the plaintiff utterly refused to divide the mow, or permit said defendant to have any of it. At the third interview the said defendant informed the plaintiff that he had money in the constable's hands to pay for said hay. After this third interview the said defendant went with the other defendants, and took away one third of the said mow of hay.

The said defendant never informed the constable that he had any interest in any of said hay, or gave him any directions to retain, or apply any of his money therefor, and the officer received his pay for all of the hay of the plaintiff, but at what precise time did not appear, and paid to Hammond all the money he held for him.

The payment, by the constable to defendant, was after the commencement and appeal, of this suit, and after the defendant had been informed that the constable had been paid, in full for the hay by the plaintiff.

The County Court, December Term, 1853,—COLLAMER, J., presiding,—upon this testimony instructed the jury, that plaintiff was entitled to recover. Verdict for plaintiff.

Exceptions by defendants.

*S. Fullam* for defendants.

The testimony of Hammond tended to prove, that plaintiff bid off the hay, for himself, Watkins and Hammond, by and in pursuance of a previous agreement.

If this were so, the defendant had a right to take the hay, unless something intervened to prevent that right. The plaintiff might have insisted that inasmuch as he alone was liable for the payment of the price of the hay, that Hammond should pay before he took his third.

No such thing appears, but the reverse, Hammond notified him that the money was in the constable's hands to pay for it, which was true.

The court then should have left it to the jury to determine whether the hay was bid off by the plaintiff, for himself, Watkins, and Hammond.

It is undoubtedly true, that the constable could have had his action, for the price of the hay against the plaintiff, Watkins and Hammond, if they agreed to have it bid off for them.

*J. F. Deane* for plaintiff.

There was no error in the charge of the court below.

1. The plaintiff and Hammond cannot be regarded as joint owners of the hay in controversy; for the case shows, that what passed between them, on the day of sale was but a negotiation, which, at the most, was but an executory contract, that was never perfected, therefore, Hammond was not an owner of a moiety of the hay, so as to be legally entitled to possession as against the plaintiff. *Whitney* v. *Lynde*, 16 Vt. 579. *Mason* v. *Thompson*, 18 Pick. 305.

2. The plaintiff purchased the hay at the constable's sale, and he alone was liable on his bid, at least, as far as was then known to the officer; and if there was such a consideration, as to make the naked agreement between the plaintiff and Hammond, on the day of sale, a valid and legal contract; (which it appears to me is more than doubtful,) still without a delivery, or division of the hay, the price not having been paid or tendered by Hammond, the plaintiff was the legal owner of the hay, and nothing had transpired to divest him of this right to the property. *Towsley* v. *Dana*, 1 Aik. 344.

To hold otherwise, would work rank injustice to the plaintiff; it would provide a way for Hammond to obtain the property without paying for it, and if irresponsible the plaintiff would loose it; but no one will question plaintiff's right to retain the property until the price is paid.

Hammond never, as the case finds, offered to pay the plaintiff for any part of the hay, nor did he ever inform the officer that he had any interest in the same. The plaintiff paid for the hay, and

XXVI 25

Hammond received his money from the officer, and judged by his own acts, he has no reason to complain.

Finally, it is clear that this property was legally and rightfully in the plaintiff, that it would have been liable to attachment on his debts ; and as these defendants have taken the property without license or right, they are liable in *trover*. And as the case stands there was nothing for the jury, save the question of damages, which was submitted to them.

The opinion of the court was delivered· by

REDFIELD, Ch. J.   I.  The first question in the case, is whether the testimony had any tendency to show a *perfected sale* of the hay, either to defendant, Hammond at the sheriff's sale, or from plaintiff to him.   For if the testimony had any tendency to show such sale, it should have been submitted to the jury.   The testimony showéd a naked agreement certainly, to bid off the hay, and divide with Hammond, giving him one third; and that the hay was subsequently bid off by plaintiff, and Hammond did not bid, relying probably upon his agreement with plaintiff.   This would constitute a consideration for the contract, if such a consideration is allowable and I do not·say it is not.   I know of no case, which has questioned it, although it is very little more equitable on the one side, than employing puffers, on the other side.   It has been held in this state, that an agreement to give a man money not to bid, at an auction is not a valid contract, being against sound policy, and this contract is very similar.

But if such a contract is valid, the party might undoubtedly have redress for any loss sustained by its non-fulfillment, but while it is merely executory, no property will pass.   And such it seems to us was the nature of this contract.   At the time the agreement was made it was clearly so ; subsequently the plaintiff purchased the hay. ˋHammond paid nothing.   His direction to the constable, in regard to the money of Hammond, in his hands, does not help the case, inasmuch as the constable was not informed, that one third of this purchase was for Hammond's benefit; and the direction of the constable was to retain the money, for any hay, which Hammond himself might purchase.   There might have been some reason, why it was not desired to inform the constable of the purchase being for the joint benefit of three.   But no order was given

Paige *v.* Hammond et al.

to the plaintiff to get the money of the constable. In short it was all, as it seems to us, left unfinished, depending merely upon the will of the plaintiff, or performance by him, and so was altogether executory.

It could not have been expected the property would vest in Hammond, until he paid the price. This he has not done, or offered to do, and there was nothing to excuse this, in any sense, until the disagreement about the other hay, and then the plaintiff altogether refused to execute this executory contract of sale, thus leaving the party to his remedy, for breach of the contract. It then became impossible for the defendant to acquire title to the hay, unless by resort to a court of chancery to compel a specific performance of the contract of sale, which would not be expected, in any ordinary case of sale of personal property.

II. It is questionable, whether the declaration of plaintiff had any reference to allowing the defendant, Hammond, to have any undivided interest in the hay. It looks like an encouragement, or contract to divide the hay and let him have one third in severalty. But if the testimony could be said to have any possible tendency to show a present executed contract of sale of one third of the property, in the mow of hay, in common, to Hammond, which it seems to us, it clearly had not, still the plaintiff had a right, by the general rules of law, to retain the thing, until he was paid his money for the price. And it is questionable whether the plaintiff's repudiating the contract of sale, will justify the defendant in taking forcible possession of the thing sold, until he tenders the price, or at least shows a readiness on his part to do so, and this made known to the plaintiff. For possibly the plaintiff might change his mind, and he ought, at least, to have the chance of taking the money for the price, before he parts with his goods, or they be taken forcibly from him.

III. And it seems very questionable to me, whether the defendant could maintain any action, upon the contract of sale even, if any such binding contract was made, without making a tender of the price, or showing readiness, at least, to perform, or being excused therefrom by some distinct act of the plaintiff. And it is not very obvious to my mind, that when a contract requires concurrent acts of either party, that the denial of the contract, by one party, will enable the other party to sue upon it, without showing

a readiness, at least, to perform on his part. It might possibly excuse the formal offer, if the other party was made aware of an existing opportunity to receive the price, if he elected so to do. *Morton* v. *Lamb*, 7 T. R. 125. *Atkinson* v. *Smith*, 14 M. & W. 695. *Dakin* v. *Williams*, 11 Wend. 67.

Finally, an agreement made to purchase property for another, no funds being furnished and no general agency existing, whether the property is purchased, or not, and if purchased, whether with the purpose of delivering it to such other person or not, vests no title in such person, and if he take the property forcibly, he is liable in trover.

Judgment affirmed.